## PEARCY *v.* TATE.

### (*Jackson.*   May 7, 1892.)

1. REDEMPTION OF LANDS.   *By administrator of lien-holder.*

    The holder of a purchase-price lien upon land, or his administrator, has the right to redeem the land from a sale made subject to redemption under his prior mortgage or trust deed.

2. SAME.   *Same.   Case in judgment.*

    P. conveyed his lands in trust to M. to secure a debt.   He then sold and conveyed the same lands in fee, but subject to said trust deed, to his son, J., taking notes and retaining lien for the purchase-price. Afterwards the lands were sold under the trust deed, subject to the right of redemption.   P. having died, his administrator, holding the purchase-price notes, redeemed the land from the purchaser at the trustee's sale.

    *Held:* P.'s administrator had the right to redeem the land as holder of the purchase-price notes secured by lien thereon.

---

FROM DECATUR.

---

Appeal from Chancery Court of Decatur County. A. J. ABERNATHY, Ch.

BULLOCK & ANDERSON and CARUTHERS & MALLORY for Pearcy.

T. P. BATEMAN and J. A. ENGLAND for Tate.

CALDWELL, J. This is a bill to rescind and vacate a redemption of land, and to assert and protect the title of complainant, from whom the redemption was made by defendant.

On March 3, 1886, John H. Pearcy, the original owner, executed a deed of trust, by which he conveyed the land in question to John McMillan, as trustee, to secure the payment of certain debts therein named. The trustee was authorized to make sale if the secured debts should not be paid by the first day of July, 1887.

On December 15, 1886, John H. Pearcy conveyed the same land, in fee, to his son, John W. Pearcy, for and in consideration of two thousand dollars, as security for which a lien was expressly retained in the face of the deed.

The latter conveyance referred to the former one in this language: "And this deed is subject to a deed of trust in the hands of John McMillan, Sr., and to be foreclosed by him, for the benefit of my creditors, the first of July, 1887. The amount to be paid is $396. The deed of trust was dated March 3, 1886, and is registered," etc.

Only a small part of the consideration was paid at the time, four promissory notes being executed for deferred payments. The last three notes called for $500 each, maturing, respectively, on December 25, 1888, 1889, and 1890. The first one was for a smaller sum, and contained significant words and figures, as follows:

"$396.00. On or by the first of July, 1887, I promise to pay John H. Pearcy the sum of $396.00, to satisfy a deed of trust, John McMillan being the trustee in said deed."

John H. Pearcy, the vendor, died intestate in May, 1887. J. H. Tate was qualified as administrator of his estate in July, 1887, and, in November, 1887, filed a bill against John W. Pearcy, the vendee, to collect said first note, then past due, and the others as they should mature, and to enforce the lien against the land. That suit is still pending; but it need not be further noticed at present.

The debts secured in the deed of trust not having been paid, McMillan, the trustee, on September 3, 1887, sold the land to J. T. Pearcy, a son of John W. Pearcy, for $405, the amount of the secured debts, with interest, and executed to him a deed.

The sale was subject to redemption, that right not having been waived by the maker of the deed of trust.

On October 2, 1888, long before the expiration of the two years allowed for redemption, Tate, the administrator of John H. Pearcy, deceased, redeemed the land, without suit, from J. T. Pearcy, paying him the full amount of his bid, with interest, and taking a receipt, reciting the fact of redemption.

More than a year thereafter, and when it was too late for any one else to redeem the land, J.

T. Pearcy, on December 31, 1889, filed this bill, seeking a rescission and vacation of the redemption, on the alleged ground that the administrator of John H. Pearcy had no right to redeem, but had fraudulently misled complainant in that regard; and seeking, further, to have complainant's title, under his purchase from the trustee, declared perfect, and to perpetually enjoin the prosecution of the suit against his father for the collection of the purchase-money notes belonging to the estate of the original vendor, John H. Pearcy.

The administrator answered the bill, denying all charges of imposition, and insisting that his redemption of the land was rightful and valid.

Hearing the cause upon these pleadings and the proof, the Chancellor granted the relief sought in the bill; and from his decree the defendant appealed.

The decree is erroneous, manifestly. John H. Pearcy did not part with the whole of his interest in the land by his conveyance of the fee to John W. Pearcy. He retained an express lien in the face of the deed as security for the payment of the purchase-money. Having retained such a lien, and it still subsisting at the time of the trustee's sale, John H. Pearcy, the vendor, had such an interest in the land that he would have been entitled to redeem it himself had he lived. Having died, and the lien continuing as a security for the purchase-money notes, his administrator, into whose hands those notes came for ad-

31—7 P

ministration, became entitled to the same right of
redemption for the benefit of the estate.

The redemption so accomplished simply relieved
the land of the incumbrance of the deed of trust,
and preserved the lien in favor of the estate of
John H. Pearcy, without vesting any personal
right in his administrator.

Confessedly, John H. Pearcy, in his life-time,
or his administrator after his death, had a · legal
right to redeem the land from the trustee before
foreclosure, by paying the secured debts and there-
by extinguishing the deed of trust; and, upon all
just and fair reasoning, the right of either to re-
deem *after* foreclosure must have been the same
as it was *before* foreclosure—nothing more, nothing
less—the right of redemption after sale not having
been waived.

So far as this question is concerned, there is
no distinction between a deed of trust and a mort-
gage as a security for debt, the right of redemp-
tion existing whether the conveyance of the debtor's
land be in the one form or the other. His in-
terests are the same, and demand the same pro-
tection in the one case as in the other.

Speaking generally, any person interested in the
land conveyed by mortgage or deed of trust, and
whose interest would be prejudiced by a foreclosure,
may redeem from the mortgagee or trustee, so as
to disengage the property and make it available
for his own use, or for the protection of that
interest; and any person with the same measure

of interest in the property may, to the same end, redeem it after foreclosure, if the right of redemption be not waived, and the application be made within two years after sale. As, in the case at bar, John H. Pearcy, the maker of the deed of trust, and subsequent vendor of the land, or his personal representative, for the benefit of his estate, had a right to redeem before or after foreclosure, to protect his lien on the land, and John W. Pearcy, his vendee, had the right to redeem before or after foreclosure, to protect his legal title.

With reference to the right of redemption of mortgaged property, and as to the persons who may redeem from the mortgagee, Mr. Story says: "From what has been already stated, it is clear that the equity of redemption is not only a subsisting estate and interest in the land in the hands of the heirs, devisees, assignees, and *representatives* (strictly so called) of the mortgageor, but it is also in the hands of any other persons who have acquired any interest in the lands mortgaged by operation of law, or otherwise, in privity of title. Such persons have a clear right to disengage the property from all incumbrances, in order to make their own claim beneficial and available. Hence, a tenant for life, a tenant by the curtesy, a jointress, a tenant in dower in some cases, a reversioner, a remainder-man, a judgment creditor, a tenant by elegit, the lord of a manor holding by escheat, and, indeed, every other person, being an incumbrancer, or having legal or equitable title or

*lien* therein, may insist upon a redemption of the mortgage, in order to the due enforcement of their claims and interests respectively in the land." 2 Story's Eq. Jur., Sec. 1023.

On the same subject, Mr. Pomeroy says: "Any person who holds a legal estate in the mortgaged premises or in any part thereof, derived through, under, or in privity with the mortgageor, and any person holding either a legal or equitable *lien* on the premises or any part thereof, under or in privity with the mortgageor's estate, may also in like manner redeem from the prior mortgage." 3 Pomeroy's Eq. Jur., Sec. 1220.

The cases relied on by complainant's counsel are not in point, as against the right of the administrator in this case to redeem.

It is true, as contended, that a sale by a judgment debtor of his lands which had been sold at execution sale, within the two years allowed for redemption, without previously having redeemed himself, is, in effect, merely a sale of his equity of redemption, although his conveyance purports to be a sale of his entire title (*McClean* v. *Hardison*, 14 Lea, 510); and that the conveyance of land in fee, *without reservation* of any right or interest, by a debtor who had previously conveyed the same land in trust for the benefit of creditors, passes his entire interest in the land, and includes the right of redemption, though not especially mentioned. *Graves* v. *McFarlane*, 2 Cold., 167. But it does not follow, and cannot be true, that a

mortgageor who, during the life of his mortgage, conveys the mortgaged premises in fee, *with an express reservation* of a lien to secure unpaid purchase-money, thereby divests himself of all interest in the land, and cuts himself off from the right of redeeming from the mortgagee.

The existence of the lien carries with it the right of redemption.

The injustice of a different ruling would find a striking illustration in the facts of this case.

Reverse and dismiss the bill, with costs.