**Anderson EDWARDS and wife Jessie L. Edwards, Plaintiffs-Appellants,**

**v.**

**Fred HUNT and wife, Geneva Hunt, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 8, 1982.

Rehearing Denied July 19, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

Petition to Rehear Denied July 19, 1982.

Charles H. Barnett, III, and Sidney W. Spragins, Jackson, for plaintiffs-appellants.

William Houston Brown, R. Bradley Sigler, Jackson, for defendants-appellees.

James M. SWIGGART, Special Judge.

In 1955, Mr. Anderson Edwards and his wife Jessie L. Edwards purchased about 86 acres of land on Hunt's Chapel Road in Madison County, Tennessee, and there they lived, farmed and raised a family. By 1963 it was paid for.

Later the Edwards had to borrow money to make a crop and borrowed it from Earl Davis and Ervin Russell. Then money was borrowed from the Golden Circle Insurance Company to pay them off and from Gus Jones to pay Golden Circle. This last transaction was secured by a general warranty deed from Edwards to Gus Jones dated January 13, 1971, stating a consideration of $250.00 but with Mr. Jones' affidavit that the real consideration was $13,864.00.

When Gus Jones needed his money back, Edwards got Fred Hunt to make a loan and they all gathered at the law offices of Harold Johnson, a Jackson attorney. Johnson prepared a deed from Jones back to Edwards another deed from Edwards to Hunt both dated March 29, 1972, and a contract of sale from Hunt to Edwards dated April 3, 1972. Mr. Edwards testified he thought he was signing a note.

Edwards had difficulty repaying Fred Hunt and on April 14, 1976, Mr. Hunt had the same lawyer, Harold Johnson, write a letter to Edwards demanding that Edwards vacate the land, which Edwards did not do. Although lawyer Johnson knew full well that the deeds he had prepared were security devices and that Edwards had an equity of redemption in the land he occupied which could be foreclosed only in Court, he nevertheless made a simple demand upon Edwards to vacate. That same month Harold Johnson prepared a general warranty deed whereby Fred Hunt and wife Geneva Hunt conveyed the same land to Gus Jones, convenanting that the Hunts were lawfully seized and possessed of the land on the date of conveyance, April 28, 1976. Because of their involvement in prior transactions, the preparing lawyer and both parties knew this convenant was not factually correct. In fact, this deed, as well as those that followed were in violation of Sections 64–406 TCA which prohibits champertous sales of pretended interests and 64–407 TCA which voids a sale of land without possession. We note that such has been the law since the statute of 32 Henry VIII.

The next transaction was a general warranty deed, also prepared by attorney Harold Johnson, conveying the property from Gus Jones to Joe Nip McKnight for a stated consideration of $100.00. There was also a convenant of seizin and possession in this deed, which Johnson and Jones knew was not factually correct. Before buying the property Mr. McKnight had Harold Johnson examine the title. McKnight knew that someone was farming the land but made no inquiry as to whether the possessor claimed any interest. Mr. McKnight's wife, Sandra, made oath to the County Register that the true consideration was $29,000.00 but according to her testimony she really didn't know what the true consideration was. Nor was Mr. McKnight very sure of the price. McKnight re-sold it to others, after plaintiffs had been forcibly ejected, through a deed that, again, did not state the actual consideration, but the affidavit reflected $70,000.00. McKnight said he didn't get $70,000.00 but he let the agent sell it for whatever he could get about $58,000.00 or $60,000.00, sometimes known as a "net listing."

It was clear from this testimony that McKnight knew someone other than the grantor, Gus Jones, was living on the land when he bought it. He made no inquiry at all. An inquiry would have disclosed plaintiffs' claim of title. McKnight then brought suit against the plaintiffs, in order to evict them. McKnight won, because the Chancery Court erroneously ruled that McKnight was a bona fide purchaser as to the party in possession. No one pointed out to the Court that McKnight was claiming under a void deed. This unfortunate result

was not appealed, and this is final as between those parties.

After being ousted from the land by a so-called bona fide purchaser, Plaintiffs, Mr. and Mrs. Edwards, brought this suit against Fred Hunt and wife for damages, having lost the right to redeem their property.

The Chancellor correctly found that plaintiffs' deeds were in fact mortgages. He determined the measure of damages to be the difference between the amount of the debt, which he found to be $18,279.77, and the amount of the sale from Gus Jones to McKnight, which he found to be $28,000.00, the best price available. He entered judgment for $9,720.23. Defendants filed a notice of appeal on January 9, 1981. Thereafter, defendants had second thoughts and on January 27, 1981, moved for a voluntary dismissal of their appeal but plaintiffs objected on the ground that they wanted to pursue a cross appeal. The Trial Court permitted defendants to dismiss their appeal but allowed the cross-appeal of the plaintiffs. In this manner it reaches this Court.

■ The first question for decision is whether the party filing a notice of appeal is able to later terminate all counter appeals by dismissing his notice of appeal. We hold that he cannot.

It was the intention of Rule 13 TRAP that only one notice of appeal be filed and that the right of cross appeal shall exist without a notice of cross appeal. The comments to Rule 13 contain these words:

"... there seems to be no good reason for so limiting the questions an appellee may urge on review. The result of eliminating any requirement that an appellee file his own notice of appeal is that once any party files a notice of appeal the appellate court may consider the case as a whole."

It is not the intention of the Tennessee Rules of Appellate Procedure that a party may dismiss an appeal to the disadvantage of another party. There are only two ways in which the process of appeal may be stopped, first, by stipulation of the parties and, second, by motion and notice without objection. 15 T.R.A.P. Although Rule 15 does not say an appeal cannot be dismissed in the face of an objection, the rights of an appellee desiring to present issues for review cannot otherwise be protected. In no other way can cross appeals be abolished.

This case being before the Court as to all parties and all questions, we must consider whether the Chancellor erred in determining the series of deeds to be mortgages. The question has particular application to the deed of plaintiffs to defendants dated March 29, 1972. One is reminded of the development of the law in England where the Chancery Court was created as a means of rescuing the development of English law from the excessively technical application of rules by the common law judges. It was necessary probably as early as the Fifteenth Century for the Chancellors to look beyond form to real substance of a transaction and declare deeds absolute to be actually mortgages with the rights of redemption. If this had not been so, borrowers using their lands as security would have been at the mercy of unscrupulous lenders. As an adjunct to this principle we have the statute of 32 Henry VIII, Ch. 9, codified in Tennessee at TCA 64–407 which voids deeds made by mortgagees while the mortgagor remains in possession. The principle was early recognized in Tennessee by Justice Haywood in *Bennet v. Holt*, 10 Tenn. 6, (1820).

The instant case is an obvious example of a series of loans with real estate as security. The original loan was for the purpose of putting in crops. When plaintiffs couldn't repay it, Gus Jones supplied funds, upon a deed as security, to merely repay the loan. When Jones wasn't paid, he didn't seek to oust plaintiffs of possession but let them redeem by funds furnished by defendants, Hunt. These transactions had no relationship to the value of the land but only to the loan. When Hunt wasn't paid, he got his money from Jones, plus interest, and Jones, in turn, got his money, plus $5,000.00, from McKnight. These transactions were the settlements of loans, not purchases of real estate.

Defendant Fred Hunt didn't give plaintiffs any money at all but gave it all to Gus Jones. However, he accepted the deed from plaintiffs with a promise to reconvey on payment of the loan. Plaintiffs had five years in which to repay and were supposed to pay $3600.00 plus interest each year. Defendant Fred Hunt explained the transaction in these words,

"Q. What was going to happen when he paid the full amount of it?

A. When he paid the full amount off, I was supposed to deed him the thing back.

Q. What was going to happen if he didn't pay the thing off?

A. Well, the place would fall to me."

Plaintiffs made two payments on the debt, one of $1200.00 and one of $1550.00, which were accepted by defendants.

■ While it is the ordinary rule that there is a strong presumption in favor of a deed absolute, the rule is otherwise where the grantor remains in possession without accounting for rents or profits and there is a provision for reconveyance in the deed or by separate contract. In such case evidence of doubtful import will be construed in favor of the theory that a mortgage was intended. 55 Am.Jur.2d, Mortgages, Section 74. 9 Thompson on Real Property, Section 4734, pp. 320–321.

Defendants argued that no new debt relationship was created until the execution of the sales contract. Actually, defendants purchased an old debt from Jones and in order to continue the pre-existing arrangement the same lawyer had Jones deed the land back to plaintiffs and plaintiffs deed it to defendants for security. Obviously neither Jones nor Hunt had any interest in the land except as security. There was merely a transfer of creditors. One notes that if Jones had good title to the land there would be no need to reconvey it to plaintiffs before the conveyance to defendants. One answer to this would be that the lawyer knew that plaintiffs were in possession under claim of right and that consequently a deed from Jones to Hunt would be void. However, this same lawyer handled later the void deeds from defendant Hunt back to Jones and from Jones to McKnight.

■ Every bit of evidence in this case points to the conclusion that the deed from plaintiffs to defendants was intended to be a mortgage. If clear and convincing evidence is needed, it is there and this Court has no reasonable doubt. However, such standards of proof aren't necessary where plaintiffs never relinquished any indicia of ownership. The Chancellor found the deed to be a mortgage and in this he was clearly correct.

It was the intention of defendants as mortgagees to not only lend money on security but to cut off the necessity of foreclosure and the right of redemption in plaintiffs as debtors. Such intentions have never been legal under Tennessee law and are not now. Ordinarily, the Court would decree a right of redemption at this time, this right being enforceable so long as plaintiffs were in possession of the land or until they should be foreclosed by appropriate legal action. However, the right of redemption has been lost to plaintiffs by the intervention of third-party purchasers.

■ The parties have agreed that considering the proof most favorable to defendants the balance of the loan due defendants by plaintiffs on April 28, 1976, was $18,279.77, and this Court accepts that figure. Defendants argue that the measure of damages is the difference between this amount and the $22,000.00 defendants received from Jones. This might well be true if the transaction between defendants and Jones had been an arm's length market value transaction. There is no reason to think that either party considered market value and we are of the opinion that neither party was motivated by market value unless Jones was thinking of a quick profit. As pointed out above, this transaction was void as to plaintiffs and plaintiffs cannot be bound by it. Defendants' transfer was merely to collect their debt with a little for their trouble and was wholly contrary to plaintiffs' rights and therefore tortious as to them.

The Chancellor found the sale from Jones to McKnight in April of 1976 at $28,000.00

was the best price available. We note that these deeds were recorded in October and that Sandra McKnight made two oaths that day, one saying the property was worth $22,000.00 and the other saying it was worth $28,000.00. In testimony she denied any knowledge of its value or of the sale price.

The 1976 purchaser, Joe Nip McKnight, had an amazing lack of knowledge of what he paid for it, of what he got for it or of what he spent on it, speaking only in generalities, but he knew when he bought it of the new lake being planned in the vicinity and he was sure he paid full value. Although, a frequent buyer and seller of real estate, he gave no expert testimony of value such as best uses, per acre sales in the vicinity or the effect of the planned lake on value.

There is the testimony of Mr. Bruce Dorris, a real estate broker and appraiser, who had appraised all the land around the Jackson-Madison County Fishing Lake in 1976, reviewing fifteen to twenty sales. He expressed the opinion that the land in the spring of 1976 was worth $600.00 per acre as a minimum, excluding improvements. At 86 acres, this would be $51,600.00.

It was stated in *Ehert v. Chapman*, 67 Tenn. 27 (1874), that where the right of redemption is lost in a similar case the measure of damages is the difference between the amount of the debt and the value of the land. Defendants rely upon *Williams v. Burmeister*, 47 Tenn.App. 414, 338 S.W.2d 645 (1959) but there the sale to the bona fide purchaser for value was assumed to be the real value and the sales price then determined damages. Here, the first sale to a bona fide purchaser without notice was McKnight's sale of approximately $70,-000.00.

We are of the opinion that the best evidence of value in this case is the testimony of Mr. Dorris and that the value at the time plaintiffs lost their right of redemption was $51,600.00. The loss to the plaintiffs was the difference in the amount of their debt, $18,279.77, and the value of the land, $51,-600.00, or a total of $33,320.23.

Judgment is entered here in favor of the plaintiffs against the defendants in the amount of $33,320.23 together with interest from the date of the complaint, September 21, 1977, at the legal rate.

SUMMERS and TOMLIN, JJ., concur.