John H. SWIFT, Appellee,

v.

Kenneth W. KIRBY, et ux., et al., Appellants.

Supreme Court of Tennessee, at Nashville.

Aug. 31, 1987.

Fred E. Cowden, Jr., Nashville, for appellee.

H. Frederick Humbracht, Diane S. Kuhn, Dearborn & Ewing, Michael J. Philbin, Robert E. Kolarich, Adams, Taylor, Philbin, Pigue & Marchetti, Thomas V. White, John N. Popham, Tune, Entrekin & White, Nashville, for appellants.

Harris A. Gilbert, John W. Lewis, Gilbert & Milom, Nashville, for McAlister & Hart amicus curiae.

Lowe Watkins, Dan E. McGugin, Jr., Watkins, McGugin, McNeilly & Rowan, Nashville, for Com. Land amicus curiae.

Jack M. Tallent, II, Rebecca B. Murray, Kennerly, Montgomery & Finley, Knoxville, for Mid-South Title amicus curiae.

Richard Dance, Dance & Dance, Nashville, for First Tennessee Bank amicus curiae.

## OPINION

FONES, Justice.

The primary issue in this case is whether the statutory right to redeem real property sold at foreclosure, granted by T.C.A. § 66–8–101 *et seq.*, is waived by use of the phrase "equity of redemption."

Plaintiff, Swift, executed a deed of trust conveying real property to secure payment of a note to Commerce Union Bank in the sum of $10,000.00. He defaulted and the property was sold by the trustee on 1 July 1982 for $8,500.00, subject to a first mortgage. Defendants Mangum, Tanley, Tanley & Davenport (Mangum) were the purchasers at the foreclosure sale and they paid the first mortgage balance in the sum of $4,691.42 prior to selling the property to defendants Kirby *et ux.* for $44,800.00.

On 29 June 1984, Swift filed suit seeking to redeem the property in reliance upon T.C.A. § 66–8–101 *et seq.* He made no tender to Mangum, or the Kirbys prior to filing suit, but tendered into court the sum of $11,500.00 alleging it to be the $8,500.00 bid at foreclosure plus $3,000.00 interest. Swift alleged that chapter 774, Public Acts of 1984 providing that a waiver of the "equity of redemption" or words of similar import waived the statutory right of redemption, was unconstitutional and made the State Attorney General a party defendant. The Attorney General filed a notice of intent not to defend the constitutionality of the act.

Defendants answered that plaintiff had waived the statutory right of redemption by the language in the deed, denied that chapter 774, Acts of 1984 was unconstitutional and asserted that plaintiff had failed to tender in accord with the statute and was not entitled to redeem.

The trial judge held that plaintiff had not waived the statutory right of redemption, that chapter 774, Acts of 1984 was unconstitutional but that plaintiff had not complied with the tender requirements, and dismissed plaintiffs suit.

The Court of Appeals agreed with the trial judge on the issues of waiver and the unconstitutionality of chapter 774, but reversed on the tender issue. The Court of Appeals held that no subsequent purchaser to the purchaser at the foreclosure sale, except a creditor[1] of the debtor, could demand more of a redeeming debtor than the

amount bid at the foreclosure sale plus interest "increased by the amount of debt or debts cancelled by redeeming creditors", that the Kirbys were not in that class and that the tender of amount bid at foreclosure, plus interest, satisfied the requirements of the statute.

The provisions of the trust deed that defendants insist waived the statutory right of redemption reads as follows: "... free from equity of redemption, homestead, dower, and all other exemptions of every kind, which are hereby expressly waived; ...."

The issue may be narrowed to whether the phrase "equity of redemption" embraces the statutory right of redemption.

The Court of Appeals held that there was a fundamental distinction between equity of redemption and the statutory right of redemption in that equity of redemption refers to the right of the debtor "prior to foreclosure, to discharge the indebtedness and thus clear his property from the encumbrance of the mortgage", while statutory redemption is the right to redeem after foreclosure and sale. The authority cited for those definitions was 55 Am. Jur.2d *Mortgages* § 865 (1971).

Next, the Court of Appeals cited two Tennessee cases for the proposition that the right of a debtor to redeem his lands sold under execution is a legal right, not an equitable right. The cases cited are *Ewing v. Cook*, 85 Tenn. 332, 3 S.W. 507 (1887) and *Reynolds v. Baker and Walker Bros.*, 46 Tenn. 221 (1869). Neither of these cases involved a question of waiver of a right of redemption, nor did either case define "equity of redemption."

In *Ewing*, the land of Wilson was sold at an execution sale to satisfy judgments against him. One of his judgment creditors, Caruthers, bought the property and took a sheriff's deed. Ewing was also a judgment creditor of Wilson. He exercised his right under the redemption statutes and redeemed Wilson's land from Caruthers.

---

1. Presumably, as defined in T.C.A. § 66–8–107, "a bona fide creditor by judgment, decree, or debt acknowledged by deed,...."

The day before that redemption, Ewing filed suit in the chancery court seeking a court sale of Wilson's right of redemption and application of the proceeds to the payment of his judgment. Wilson died testate and devised his interest in the land to Cook. Cook made a tender of redemption money to Ewing, as required by statute and within the two year period, but Ewing refused the tender because it did not include the full amount of the debt due him from Wilson. Under the statute, T.C.A. § 66–8–101 *et seq.*, Ewing could have advanced the redemption bid to Caruthers, to include the whole debt, but he had failed to comply with the statute. Upon his refusal to agree to Cook's redemption, Cook filed suit, presumably a crossbill, to compel Ewing to submit to redemption. The first issue considered by the court was the validity of Ewing's contention that Wilson's equity of redemption should be sold to satisfy the entire debt that Wilson owed Ewing. The court said: "The right of a judgment debtor to redeem his lands sold under execution is not an equitable right at all. It is the creature of statute and depends on statute law, and in no sense [is it] a right either created or regulated by principles of equity." 85 Tenn. at 335, 3 S.W. 507. That is the portion of the opinion in *Ewing* relied upon by the Court of Appeals, but the *Ewing* court continued as follows:

> Strictly speaking, there is no estate in the judgment debtor after sale and conveyance of his land under judgment sale. Nothing remains to the debtor, after execution sale, and Sheriff's deed, save a statutory right of redemption. This right of redemption has sometimes been spoken of as an equitable right, and his interest in the land subject to redemption as an equitable estate. This terminology springs from the supposed analogy between the statutory right of redemption and the equity of redemption of a mortgagor. But whatever may be the technical character of the interest springing from the right of redemption given to a judgment debtor whose lands have been sold under execution, it is not one which may be reached and subjected to sale by

> a creditor who is in condition to redeem as provided by statute.

*Id.* at 336, 3 S.W. 507.

The *Ewing* court recognized that the statutory right of redemption was sometimes spoken of as an equitable right, subject to redemption as an equitable estate. Its holding was simply that whatever the interest the debtor has under the statutory right of redemption, it is not "subject to sale by a creditor who is in condition to redeem as provided by statute." *Id.*

In *Reynolds v. Baker and Walker Bros., supra,* Reynolds' land was sold on 2 June 1860 after execution sale. He attempted to redeem the land at some undesignated date more than two years after the execution sale but before 12 February 1863, but Walker Brothers, the initial purchasers refused to allow the redemption. On 14 January 1865 Reynolds brought suit to enforce his right of redemption, asserting that a constitutional amendment and a legislative act had ordained that no statute of limitations would operate between 6 May 1861 and 1 January 1867 and that the time between those days would not be computed where real estate sold under execution, etc. was subject to redemption. This Court considered and decided two issues: (1) the law of redemption is not a statute of limitations and not subject to either the constitutional amendment or the legislative act; and (2) the legislative act was unconstitutional insofar as it sought to authorize the redemption of land that had been sold and whose two year redemption period had expired, before the passage of the act. In short, the attempted retrospective application would deprive the holder of the land of a vested interest. It was in the course of deciding the second issue that this Court made the pronouncement relied upon by the Court of Appeals, to-wit, that the right of the debtor to redeem is not an equity of redemption. That it was unnecessary to support the rationale used by the court to find that the legislative act was unconstitutional will be seen from the following quote:

> The right of the debtor to redeem, is not an equity of redemption, in the sense

of the law of mortgage. It is not an estate or interest in the land. The whole estate is vested in the purchaser by the sale. The right of the debtor is strictly a right to re-purchase, by payment or tender of the money within the prescribed time. If the money be paid or tendered within the time, the debtor has a right to re-conveyance of the land; and the purchaser is bound to make such re-conveyance. If the money be not paid or tendered, the right of the debtor is at an end and lost. The estate of the purchaser is absolute and indefeasible, and the debtor has no interest in it, or right with regard to it. So far as the debtor is concerned, the law is, after the lapse of two years, without offer to redeem, absolutely and exclusively the property of the purchaser, in as ample a manner as it is possible for the law to bestow and vest. *Id.* 46 Tenn. at 227–28.

The third Tennessee case relied upon by the Court of Appeals was *Hunt v. Liles*, 35 Tenn.App. 173, 243 S.W.2d 149 (1950). It was a suit to enforce redemption of land sold for delinquent taxes. Before the decree of sale was entered the Tax Moratorium Act, Chapter 50, Acts 1939 became effective and the court concluded that the tax sale was void. One of the issues raised was that the statute of limitations had created a defensive title in the purchaser at the tax sale, and those claiming under him. In responding to that issue the court paraphrasing in part the above quotation from *Reynolds*, stated that "it [the statutory right to redeem] is not an equity of redemption in the sense of the law of mortgages, because the whole estate passes by the sale to the purchaser...." *Id.* 46 Tenn. at 152.

We are unable to concur in the conclusion of the Court of Appeals that these cases are established precedent for a holding that the phrase "equity of redemption" has not and cannot embrace the statutory right of redemption. To the contrary, the courts of Tennessee, trial, intermediate appellate and the Supreme Court of Tennessee, have without exception, used "equity of redemption" to mean the statutory right of redemption that had its origin in Chapter 11, Public Acts of 1820, now T.C.A. §§ 66–8–101 *et seq.*

In each of the following cases the statutory right of redemption was identified by use of the phrase "equity of redemption," and the phrase "statutory right of redemption" was not used: *Carden v. Spilman,* 1 Tenn.Cas. (Shann.), 10 (1847); *Gentry v. Gentry,* 33 Tenn. (1 Sneed) 87 (1853); *Carter v. Sims,* 49 Tenn. (2 Heis.) 166 (1870); *Toombs v. Palmer,* 51 Tenn. (4 Heis.) 331 (1871); *Greenwald v. Roberts,* 51 Tenn. (4 Heis.) 494 (1871); *Hoyal v. Bryson,* 53 Tenn. (6 Heis.) 139 (1871); *Bumpass v. Alexander,* 57 Tenn. (10 Heis.) 542 (1873); *Cooper v. Murfreesboro Savings Bank,* 64 Tenn. (5 Baxt.) 636 (1875); *Glass & Co. v. Porter,* 66 Tenn. (7 Baxt.) 114 (1874); *Love v. Williams,* 70 Tenn. (2 Lea.) 226 (1879); *Lincoln Savings Bank v. Ridgway,* 71 Tenn. (3 Lea.) 623 (1879); *Wessel v. Brown,* 78 Tenn. (10 Lea.) 685 (1882); *Paul v. Williams,* 80 Tenn. (12 Lea.) 215 (1883); *Knox v. McCain,* 81 Tenn. (13 Lea.) 197 (1884); *McClean v. Harris,* 82 Tenn. (14 Lea.) 510 (1884); *Maxwell v. Smith,* 86 Tenn. (2 Pick.) 539, 8 S.W. 340 (1888); *Pearcy v. Tate,* 91 Tenn. 478, 19 S.W. 323 (1892); *McGuire v. Gallagher,* 95 Tenn. 349, 32 S.W. 209 (1895); *Saunders v. Savage,* 63 S.W. 218 (Tenn.Ch.App.1900); *Taylor v. Elgin,* 140 Tenn. 602, 205 S.W. 428 (1918); *Fite v. Jennings,* 193 Tenn. 250, 246 S.W.2d 1 (1952); *Fite v. Wood,* 194 Tenn. 308, 250 S.W.2d 543 (1952).

As recently as 1982 the Western Section of the Court of Appeals in *Edwards v. Hunt,* 635 S.W.2d 696 (Tenn.App.1982) used the phrase "equity of redemption" in a factual context that necessarily included the statutory right of redemption.

In 1923 the Tennessee legislature passed an act to prescribe a more efficient procedure for the collection of delinquent taxes. Acts of 1923, Chapter 77. Section 8 of that act set out the procedure for filing suit and obtaining a decree of sale of land impressed with a lien for taxes, whereupon, "(t)he court shall order a sale of such land so as to provide that such land shall be sold for cash subject to the equity of redemp-

tion." This reference to the equity of redemption has been carried in the Tennessee Code continuously since 1923 and is presently a part of T.C.A. § 67–5–2501. That the legislature was referring to the statutory right of redemption is beyond question, and this court has so construed the statute by unmistakable inference in *State ex rel. v. Adcock, et al.*, 185 Tenn. 627, 207 S.W.2d 339 (1948). *Adcock* was a suit to redeem a tract of land sold for delinquent taxes. The tax sale occurred on 17 March 1945 and the suit to redeem was filed on 19 February 1947. In referring to the relief sought by the complainant, the late Mr. Justice Gailor, a widely regarded legal scholar, who was also a Rhodes scholar, said: "His equity of redemption had about a month to run." *Id.*, 185 Tenn. at 629, 207 S.W.2d at 340.

Chapter 31, Gibson's Suits in Chancery, 5th ed. (1955), is entitled DECREES OF SALE, AND PROCEEDINGS THEREON. Section 669 in said chapter is entitled Sale of Land in Bar of Redemption. The author observes that "[o]rdinarily ... real estate sold for debt ... is sold subject to redemption at any time within two years after sale" citing the code sections at issue in this case granting the statutory right of redemption. The author then lists the three things that must be done to "destroy the right of redemption" as follows:

> 1st, the complainant must pray in his bill that the land specified in the bill be sold on a credit, and in bar of the equity of redemption; 2nd, this specified land must be mentioned in the decree of sale; and 3d, the decree must order that the sale be on a credit, specifying the time, which must be not less than six months, nor more than two years, and that when made no right of redemption shall exist.

*See also* Gibson's Suits in Chancery 6th ed, § 282 and § 472 (1982).

Tennessee is not the only state in which the phrase "equity of redemption" has embraced the entire panoply of rights of redemption as they developed down through the years. In *Messer v. American Eagle Fire Ins. Co.*, 227 Ky. 3, 12 S.W.2d 358 (Ken.App.1928), where the Kentucky statute permitted redemption within a period of one year following judicial sale if the sale did not bring two-thirds of the appraised value, the court made the following observation:

> When the owner's property is sold under judgment of the court to pay his debts, the title does not pass to the purchaser until the year allowed for redemption expires, if the property does not sell for two-thirds of its appraised value. (citations omitted) An equity of redemption, or legal right to redeem, is that right which the owner of the property has to regain the complete title to his property by the payment to the purchaser of the amount for which the property was sold, with interest and penalties, in accordance with the provisions of the statute.

In *Simons v. Bryce*, 10 S.C. 354 (1878), the Supreme Court of South Carolina had under consideration the effect of two legislative acts upon a release of the equity of redemption by the mortgagor.

> Again, it is obvious that the words "equity of redemption" do not mean what the words would naturally import, for it is beyond dispute that the interest which is commonly called the equity of redemption is liable to levy and sale under an execution; and it is equally clear that if it were, what the words import, a mere equity, it would not be liable to levy and sale under an execution. It is plain, therefore, that what is miscalled the equity of redemption is, in fact, the legal estate in the land,....

*Id.* at 373.

It would unnecessarily lengthen this opinion to cite the many cases from other jurisdictions that have recognized that the phrase "equity of redemption" by common usage, embraced the statutory right of redemption that evolved from time-to-time and in dissimilar manner in the respective states.

Typical of those cases is *Kortright v. Cady*, 21 N.Y. 343, 78 Amer.Dec. 145 (1860) where the Court of Appeals of New York, that State's court of last resort, said:

> So we have the terms, "redemption" and "equity of redemption," which belonged

to a system of law that gave the legal estate, defeasibly before default and absolutely afterwards, to the mortgagee, and which, while that system prevailed, were descriptive of the mortgagor's right to go into equity, on the condition of his paying his debt, to redeem a forfeited estate and demand a reconveyance. These descriptive words yet survive, and are in use, although the ideas they once represented have long since become obsolete.

21 N.Y. at 365–66.

The "idea" that the phrase equity of redemption represented, originated when mortgages were used as security instruments, prior to the advent of the deed of trust, and when courts of equity decided to relieve debtors of the harshness of the law of mortgages that vested full title in the mortgagor immediately upon default. The remedy provided by the courts allowed the debtor to redeem at any time between default and consummation of a foreclosure sale. All authorities agree that that right was the original meaning of the equity of redemption. However, with the advent of the right of redemption created by statute in the various states, the right of redemption continued to be referred to in many states, as in Tennessee, as the "equity of redemption."

Although no reported case in Tennessee has so held, the courts of our sister states have, without exception, held that the equity of redemption cannot be waived in the mortgage instrument or at any time prior to default. See 59 C.J.S. § 818 (1949) citing cases from North Carolina, Oregon, Minnesota, Alabama, Montana, Oklahoma, Delaware, Michigan, Wyoming, Arkansas, Illinois, Washington, Iowa, Florida, Kansas and Maryland. The purpose of that principle of law was to prevent the creditor-mortgagee from thwarting the grant of the equity of redemption by courts of equity to relieve the harshness of the mortgage instruments vesting of fee simple title in the mortgagee upon the instant of default.

As relevant to the case at bar it is not necessary that we adopt that rule. It is sufficient to observe that no rule exists in Tennessee validating a waiver in a mortgage or deed of trust, the effectiveness of which is limited to the period between default and consummation of a foreclosure sale. Such a waiver, if it existed, would meet the definition advanced by the Court of Appeals. We are not aware of any time in the history of this State when such a waiver was in use and recognized by the courts.

Thus, the conclusion we find relevant to this case is that if the parties did not intend to waive the statutory right of redemption by use of the words "equity of redemption", they waived nothing, because no other right of redemption was in use or authorized by the law of this State.

There is an additional factor relevant to the meaning of the words "equity of redemption" of which the Court can take judicial notice, to-wit: unless the two year statutory right of redemption is expressly waived, the value of a deed of trust to secure an indebtedness would be greatly diminished. The obvious reason is that the forced sale value of real estate, which is well below fair market value, would be significantly further reduced by sale subject to the two year right of redemption. Lenders or creditors do not enter into transactions involving an acceptance of a deed of trust where the deed in effect secures only a small fraction of the value of the real estate.

We find that the expression "equity of redemption" by common usage throughout the period from 1820 to date has been sufficiently pervasive to include within its meaning the statutory right of redemption granted in T.C.A. § 66–8–101 et seq. and that its use fulfills the requirement of an express waiver required by T.C.A. § 66–8–101(3).

After finding that the meaning of equity of redemption was limited to the period between default and foreclosure sale and did not embrace the statutory right of redemption, the Court of Appeals held that the legislature's amendment of T.C.A. § 66–8–101(3) was unconstitutional because it was expressly given retrospective application.

By chapter 774 Acts of 1984, the Tennessee Legislature added the following to T.C.A. § 66–8–101(3):

> and a waiver of the "equity of redemption", or a waiver using words of similar import, shall be sufficient to waive the right of redemption afforded by this section in all deeds of trust and mortgages, whether heretofore or hereafter existing.

The intermediate court held that since the law was and, inferentially, always had been that the words "equity of redemption" could not waive the statutory right of redemption, the legislature had, by giving the amendment retrospective effect, impaired the obligation of contracts and taken away vested rights.

If that had been the result of the legislature's action we would, of course, agree with the Court of Appeals. However, just the reverse has occurred.

■ That issue has never been addressed by this Court, nor by the Court of Appeals, in a reported opinion. The Western Section of the Court of Appeals, in *Prichard, et al. v. Rogers, et al.*, released January 6, 1984, held that the phrase "equity of redemption" referred to a separate and distinct right from that of the statutory right of redemption and that the use of that phrase was ineffective to waive the statutory right of redemption. No review of that decision was sought. This Court is not committed to all of the views expressed in an opinion of the intermediate appellate courts when we deny discretionary review, *e.g. Adams v. State*, 547 S.W.2d 553 (1977), *Street v. Calvert*, 541 S.W.2d 576 (1975) and *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 130 S.W.2d 85 (1939). It follows that when no application for review of an opinion of the intermediate courts is sought, it has no stare decisis effect, and such an opinion cannot serve to modify or change existing law. The doctrine of state decisis, especially as respects rules of property, does not apply with full force until the question has been determined by a court of last resort. *See, Bryan v. W.T. Smith Lumber Co.*, 278 Ala. 538, 179 So.2d 287 (1965); *Shreveport v. Baylock*, 236 La. 133, 107 So.2d 419 (1958) and 20 Am.Jur.2d, *Courts* § 201 (1965).

■ Although the status of *Prichard v. Rogers, supra,* was such that it did not change existing law, we expressly overrule it and reverse the Court of Appeals' opinion in the instant case. We find that the phrase "equity of redemption" embraced the right of redemption created by statute in 1820, and that continuously since that time it has been the law that those words were sufficient to waive that right. Thus, it was the Court of Appeals, not the legislature that gave retrospective effect to a new interpretation of the law that impaired the obligation of contracts and interfered with vested rights.

We find chapter 774, Acts of 1984 a constitutional enactment.

We reverse the judgment of the Court of Appeals and dismiss this lawsuit. Costs are adjudged against plaintiff Swift.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ.