3L 679
4L 54
11L 672
12L 455
13L 622

STATE OF TENNESSEE *et als. v.* MARTHA W. DUNCAN *et als.*

CHANCERY COURTS. *Jurisdiction. Sale of land for taxes.* The State, county of Davidson and city of Nashville joined in a bill to enforce their lien for taxes on a piece of property from year to year. Each year tax sales were had at which, for want of other bidders, complainants' officers bid in the property for the amount of the tax, costs, in-

terest, etc. The bill prays for an account and for a sale of the property free from redemption. Held:

1. That such a bill is not multifarious.

2. That the State, county and city may file such a bill in their own name without the intervention of any commissioner or other officer.

3. That the chancery courts have inherent jurisdiction to enforce the lien created by the act of 1813, ch. 98, carried into the Code secs. 554 and 555.

4. That this jurisdiction does not depend upon any act of the Legislature, but is inherent, and that chancery courts were not deprived of such jurisdiction by the Commissioner's Acts of 1872–73.

5. That it is doubtful whether those acts were intended to have general effect, or whether they only applied to taxes prior to their passage.

6. That no good reason is to be seen why sec. 9 of the act of 1875, ch. 81, which re-enacts the lien and declares it to be *enforceable as other liens*, should not be construed as express statutory authority for resorting to any remedy that the law allows.

7. That a statute creating a new remedy without expressly repealing the old remedy, is merely cumulative, and will not deprive a court of its jurisdiction to enforce the old remedy.

8. That the provisions of sec. 4489 of the Code are general, and give the chancery court the power to sell on a credit so as to cut off the equity of redemption in all cases where the specific land to be sold is mentioned in the decree, and that this is not an ordinary statutory tax sale, but the enforcement of the lien for taxes, and that the decree for sale free from redemption and on time was proper.

9. That complainants are entitled only to the costs up to and including the condemnation in the circuit court.

10. That the Chancellor did not err in disallowing all penalties, the penalty prescribed by the act of 1873 being repealed by the act of 1877, and that he did not err in refusing to allow ten per cent. interest claimed by complainants under the Acts of 1875.

---

FROM DAVIDSON.

---

This bill was filed in the Chancery Court at Nashville by the State of Tennessee, the county of Davidson, and the Mayor and City Council of Nashville against Martha W. Duncan and other persons having

an interest in the land described in the bill. There were eleven grounds of demurrer, as follows:

1. Because the court has no jurisdiction over the subject matter, or to grant the relief prayed for.

2. Because B. J. Lea, Attorney-General, W. K. McAlister, Jr., City Attorney, John Ruhm and Thos. L. Dodd have no authority in law to file this bill.

3. Because the bill is multifarious, in that it joins parties whose interests are separate, distinct and independent, etc.

4. Because complainants' remedies are full, adequate and complete at law, and they do not allege the exhaustion of such remedies.

5. Because complainants' remedies, under the act 1873, relating to collections of back taxes, are full, adequate and complete, and they do not allege the exhaustion of such remedies.

6. Because this court has no jurisdiction to collect taxes or order sales of property for unpaid taxes, except under said act of 1873, and this bill is not filed under that act.

7. Because this court has no inherent jurisdiction to collect taxes or order sales of property for unpaid taxes, even after all legal and statutory remedies have been exhausted.

8. Because said taxes are not liens on the property, or if liens, statutory liens, and this court has no jurisdiction to enforce the decree by sale.

9. Because the court will not decree a partition except when parties praying for same are owners in common, in possession under an undisturbed title.

10. Because this court will not remove cloud, except where one shows a good legal title in himself.

11. Because there is no statute authorizing the filing of such bill.

The Chancellor overruled the demurrers, and the cause was heard on bill, answer and proof, and a decree rendered in favor of each complainant for the amount of the taxes proper, with six per cent. interest · from the day each tax sale took place, also for all the costs up to and including the condemnation in the circuit court, being, in the case of each separate tract, one dollar for entering up judgment of condemnation, and fifty cents for the return of the officer. But all costs of sales, including printer's fees, and the penalties claimed under secs. 570, 571, Acts of 1873, were disallowed. The Chancellor also disallowed the claim of complainants to ten per cent. interest under the act of March 23, 1875, ch. 80. He decreed a sale free from the equity of redemption and on time. Complainants and defendants appealed. A. G. MERRITT, Ch.

ATTORNEY-GENERAL LEA, JOHN RHUM, THOS. L. DODD and W. K. MCALISTER, JR., for complainants.

JAMES TRIMBLE for defendants.

MCFARLAND, J., delivered the opinion of the court.

The bill in this cause was filed in the Chancery Court at Nashville in the name of the State of Ten-

nessee, the county of Davidson and the Mayor and City Council of Nashville, and alleges, in substance, that the defendant, Martha W. Duncan is and, during the time afterward mentioned, has been the equitable owner of two valuable pieces of real estate, particularly described as situated in the city of Nashville.. That from the year 1868 to 1878 inclusive, all the taxes assessed for all purposes in favor of the several complainants remain unpaid. That, except for the year 1878, said pieces of property have from year to year been sold under the laws in force at the time, and bid in, in the name of the several Comptrollers, for taxes and costs and charges, no one else bidding. Said sales were in pursuance of condemnation in the circuit court, except for the years 1878 and 1879, when the law did not require condemnation, and when, according to the law then in force, the property was bought in by the proper officer in the name of all the complainants jointly, but no deeds have been taken.. The bill then makes the following statement: "Complainants are advised that they did not acquire full and perfect legal titles to any of said property because of irregularities in the proceedings for condemnation, advertisements and sales; furthermore, because the law providing for condemnation and sale of property does not vest complainants with the right and power to become owners in fee of property sold by them for the enforcement of tax assessments and liens under ordinary condemnation and sale at law, and finally, because the fact that complainants' officers bid in the property at their sales probably placed complainants in the posi-

tion of trustees purchasing at their own sales." They say they 'are willing to perfect the sales if the defendants so elect, in which event they pray a partition among themselves. But that they really only desire the payment of taxes, interest, costs, etc., and are willing, even if the sales in their favor be valid, to waive the right to hold the entire property, and have it sold by decree of the court for the taxes and interest, costs and penalties, giving to the defendant the benefit of all the property, or its proceeds over these sums. And this is in substance the relief prayed for.

Many causes of demurrer were assigned, and overruled by the Chancellor. A very ingenious and earnest argument has been made in support of the demurrer in this court. The stress of the argument has been upon those grounds of demurrer which, in various forms, raises the question of the jurisdiction of the court. The argument may be briefly stated as follows:

That taxes are allowed only in accordance with express statutory provisions. That especially the lien claimed upon real estate for the taxes due thereon is only given by statute, and our statutes point out special statutory remedies for the collection of all taxes and the enforcement of all liens for taxes, and by necessary implication prohibit the enforcement of such rights in other modes upon the principle that where a statute creates a new right unknown to the common law, and at the same time gives a specific remedy for its enforcement, the right cannot be enforced in any other mode, and that a court of chancery has

no ordinary inherent jurisdiction of a case of this character.

It is argued that the ordinary statutory mode of reporting, condemning and selling lands, changed afterward by the act of 1875, to a sale without condemnation, is the remedy given in the first instance in the collecting of taxes. That in cases like the present, where lands have been sold under proceedings that turn out to be invalid, a special remedy is given under the acts of March 27, 1872, and March 21, 1873, which provide for a special commissioner, and give authority to him to file a bill in his own name in the chancery court for the sale of the land for the taxes, etc., in the manner therein set forth, and that the remedy given in these acts apply especially to a case like the present, and exclude all other remedies; that the present bill is not filed in the name of a commissioner, and is otherwise a departure from the remedy specified in these acts, and consequently cannot be maintained. Taxation is regulated by statute, but the right is inherent in the government, and while remedies are given by statute, yet it was held as far back as 1828, that taxes, when assessed, become a personal debt, and the government is entitled to all the remedies for their collection, including an ordinary suit at law, if it chooses to resort to that remedy. *Mayor and Aldermen of Jonesboro* v. *McKee,* 2 Yer., 167. And the same in substance was held in the case of *Rutledge* v. *Fogg,* 3 Col., 554, where a claim for taxes was allowed to be filed as a debt, and paid

out of the proceeds of the realty in an insolvent proceeding in chancery.

The lien given for taxes is statutory, but the original act of 1813, which first declares the lien, does not appear to have pointed out any special mode for its enforcement. But it can hardly be doubted that any valid sale of land for taxes in the ordinary mode pointed out by the statutes, either then or subsequently in force, would relate to the date of the assessment and entitle the purchaser to the benefit or the lien from that date, and no proceeding instituted with special reference to the enforcement of a lien was necessary. No such proceeding for the enforcement of a lien was ever required by statute to be instituted. Though the right to resort to the ordinary mode of enforcing liens might be held to exist (though we do not decide this), according to the principle of the case referred to, yet it was never resorted to because a more expeditious and less expensive remedy was given.

It will be remembered, however, that this is not an ordinary case of unpaid taxes, where the summary statutory remedy is unembarrassed, but a case where the lands have from year to year been sold and bought in for the taxes and costs, and knowing, however, the difficulty of maintaining the validity of these sales, the State hesitates to engage in a litigation with the owner for the recovery of the land, a litigation likely to enure to the benefit of the owner by causing still further delay, and not likely to accomplish any good result for the State, and further, desiring only the payment of the taxes, equitable relief is sought. The

State *v.* Duncan.

ordinary statutory remedy for a sale would but more likely still further complicate the matter. A chancery court would not refuse to take jurisdiction in behalf of an individual whose rights might be thus complicated. There could be no good reason for denying to the State all the remedies afforded to individuals, unless there be an express prohibition, especially when all other remedies have been practically of no avail. But it is argued that the remedy given by the acts of 1872 and 1873, in cases precisely of this character, are exclusive. In the first place, it is doubtful whether those acts were intended to have general effect. After reciting in the preamble that in many instances lands have been sold for taxes and bought in the name of the Superintendent of Public Instruction, and the sales are probably valid, it is enacted that a commissioner be appointed in each county to collect these back taxes; that within ninety days from the passage of the act he should be furnished with a list of all such cases, and the act then proceeds to authorize such commissioner to file a bill in his own name for the sale of said lands, and it may be doubtful whether the entire act does not relate simply to a sale of these lands required to be reported to this commissioner; but we did not decide this, it not being, in our opinion, necessary. It may be further observed that, if it be conceded that these acts apply, the only very serious objection to sustaining the jurisdiction in the present case under them, is the fact the bill is not filed in the name of a commissioner. Yet it was held by this court that such a bill could be main-

tained, under these acts, in the name of the city of Memphis, without a commissioner. *City of Memphis* v. *Looney,* 1 Leg. Rep.

But we place our decision of this question upon broader ground, and that is that the court has jurisdiction independent of the act, and that this is not a proceeding under these acts. Previous to the act of 1872 there was no adequate statutory remedy given in a case of complication and embarrassment like the present for the collection of back taxes. And previous to that time a court of chancery could hardly have refused to take jurisdiction. Such jurisdiction would have been inherent. If so, the passage of that act did not divest a jurisdiction previously vested.

This would be our conclusion independent of any express statutory authority for equity jurisdiction; but the act of 1875, ch. 81, sec. 9, re-enacts the lien declared by the act of 1813, and declares that "until the taxes on any real estate are paid there shall be a lien for the same—first to the State, second to the county, third to the city, and fourth to the railroads, *enforceable as other liens.*" We see no good reason why this should not be construed as express statutory authority for resorting to any remedy for the enforcement of the lien that the law allows to individuals for the enforcement of liens in their favor.

We pass by the question whether the principle that the giving of a statutory right with a statutory remedy is a prohibition of all other remedies, applies to the Government. See *Savings Bank* v. *United States,* 19 Wal., 233. At all events, needful remedies not

especially prohibited ought not to be denied to the Government where, upon similar facts, the same remedies would not be denied to individuals. A bill similar to this was sustained by Judge Cooper as Chancellor in the case of *Edgefield* v. *Brien*, 3 Ch. R., —, and to his reasoning in that case, as well as the reasoning of Judge Turney in *Memphis* v. *Looney*, reference is made.

The enforcement of the collection of taxes so as to make the burden fall as nearly as possible upon all alike, has been one of the most difficult of legislative problems. To this task the Legislature has, from term to term, devoted much time and attention, and stringent laws have been enacted, and it is perhaps to be regretted that the courts have, in some instances, adopted a line of decisions that have rendered the laws ineffectual. A very considerable class of property owners persistently and systematically refuse, from year to year, to bear their just proportion of the public burden. Knowing that tax sales are usually held void, they utterly disregard them, and set the demands of the law in this respect at defiance. In this way large deficits occur which must be made up by the other tax payers.

In the present case one of the lots has been valued at from $15,000 to $20,000, the other from $6,000 to $12,000, and yet for nine years not a dollar of taxes have been paid, nor is any excuse or apology offered for it. Under these circumstances the argument so ably and so earnestly made against the jurisdiction in this case, upon the ground that the taxes may be

44—VOL. 3.

paid to some one not under bonds or not authorized by law to receive it, does not seem to be controlling, inasmuch as the interests of the State, county and city cannot well suffer more seriously or their rights be more embarrassed than they are at present.

Without discussing the other grounds of demurrer, the decree of the Chancellor overruling the same will be affirmed.

The complainants appeal from the final decree of the Chancellor, and assign for error his refusal to allow the costs of advertising and selling the property in the various sales referred to. If the sales were void, we see no principle upon which the owner could be required to pay the costs thereof. There is nothing in the records from which they can be determined except the statement of the bill that complainants are advised that they did not acquire perfect legal title to any of said property by reason of irregularity, etc., as well as for other reasons.

It was, perhaps, not necessary that this concession should have been made. The complainants might, perhaps, even upon the assumption that the sales were perfectly legal and valid, well have preferred to waive their rights to the property, claiming only lien for all taxes, costs, etc., and concede to the defendant the right of redemption. If the defendant accepted this concession the court would have jurisdiction, and the right of the complainants to all costs would be clear. If the defendant refused to accept the concession, the county would have the right to sell the property as their own. *Webb* v. *Miller*, 8 Heis., 448. We think,

however, upon the conclusion of the bill, that we must take it that the sales were invalid, and that the Chancellor's decree upon this point was correct.

We are further of opinion that the Chancellor was correct in disallowing all penalties. The penalty prescribed by sec. 61 of the act of 1873 was repealed by the act of 1877, and this, in our opinion, left no other penalty in force applicable to a case like the present.

It is next argued that it was error to decree a sale on time without the equity of redemption. It is true that all the provisions of our statutes providing for a sale of lands for taxes provide for the right of redemption, but these acts contemplate the ordinary tax sales, made in the usual mode. It is also true that the acts of 1872 and 1873, above referred to, provide that the sales therein authorized shall be with the right of redemption, but as we have seen, this is not a bill under these acts.

The provisions of our Code, sec. 4489, are general and comprehensive, and give the chancery court the power to sell on a credit, so as to cut off the equity of redemption in all cases where the specific land to be sold is mentioned in the decree. In our opinion these provisions are broad enough to include this case.

The defendant has certainly had ample time. The unreasonable delay in payment has made a resort to a chancery court necessary, and the defendant cannot complain of the result. Simple justice to the prompt taxpayers of the State, as well as the spirit of all our legislation and the dictates of a sound pub-

lic policy, alike require that the courts should rigidly enforce all lawful remedies against willful delinquents.

The decree of the Chancellor will in all respects. be affirmed with costs.