FILED
06/10/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2022 Session

**STATE OF TENNESSEE EX REL. HERBERT H. SLATERY, III, ATTORNEY GENERAL AND REPORTER v. HRC MEDICAL CENTERS, INC. ET AL.**

**Appeal from the Circuit Court for Davidson County**
**No. 12C4047 Don R. Ash, Senior Judge**

---

**No. M2021-00488-COA-R3-CV**

---

The State appeals the trial court's holding that Tenn. Code Ann. § 66-8-101(1) applied to the State's attempt to have the Defendants' real estate sold in order to collect on its judgment, such that the statutory right of redemption could not be barred. Because we conclude that the sale sought by the State could proceed under subsection (2) of that statute, we vacate the court's order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Jared Alan Hagler, Assistant Attorney General, for the appellant, State of Tennessee.

W. Kennerly Burger, Murfreesboro, Tennessee, and Steven Lee Lefkovitz, Nashville, Tennessee, for the appellees, Dan Hale, Dixie Hale, and Don Hale.

## OPINION

In this appeal, we construe the statutory right of redemption set forth in Tenn. Code Ann. § 66-8-101, and specifically whether that right could be curtailed in this case when the State sought an order of sale of real property to satisfy its money judgment. In 2017, the State of Tennessee prevailed in a Tennessee Consumer Protection Act action and was awarded a judgment of $18,141,750 against Dan Hale, Dixie Hale, and Don Hale ("Defendants"), who were held personally liable for engaging in fraudulent and deceptive

practices in their operation of bio-identical hormone replacement therapy centers; the judgment was affirmed on appeal. *See State ex rel. Slatery v. HRC Med. Ctrs, Inc.*, 603 S.W.3d 1 (Tenn. Ct. App. 2019). The State recorded the judgment in the counties where the Defendants owned real property, perfecting its judgment lien.[1] The State then moved for an order authorizing the sale of the Defendants' real properties in an attempt to satisfy the judgment. In an effort to maximize the value and purchase price of these properties, the State subsequently requested that the order of sale specifically confirm that no right of redemption existed, in accordance with Tenn. Code Ann. § 66-8-101(2). That statute reads:

> Real estate sold for debt shall be redeemable at any time within two (2) years after such sale:
>
> (1) Where it is sold under execution;
>
> (2) Where it is sold under any decree, judgment, or order of a court of chancery, whether founded upon a foreclosure of a mortgage, or deed of trust, or otherwise, unless, upon application of the complainant, the court orders that the property be sold on a credit of not less than six (6) months, nor more than two (2) years; and that, upon confirmation thereof by the court, no right of redemption or repurchase shall exist in the debtor or the debtor's creditor, but that the title of the purchaser shall be absolute; and
>
> (3) Where it is sold under a deed of trust or mortgage without a judicial sentence, unless the right of redemption is expressly waived by the deed or mortgage; and a waiver of the "equity of redemption," or a waiver using words of similar import, shall be sufficient to waive the right of redemption afforded by this section in all deeds of trust and mortgages, whether heretofore or hereafter existing.

Tenn. Code Ann. § 66-8-101.

The circuit court concluded that the State was executing on a judgment and therefore Tenn. Code Ann. § 66-8-101(1), not subsection (2), applied; thus, the properties could be redeemed by the Defendants within two years of the sale. Accordingly, it denied the State's request to bar the right of redemption.

[1] "[P]ursuant to Tennessee Code Annotated section 25-5-101(b)(1), a lien on a debtor's real property is perfected by recording the judgment in the register's office of the county where the property is located." *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007); *see also* TENN. R. CIV. P. 69.07(2).

The State appealed, and raises the following issue for our review:

> Whether the trial court erred in concluding that a court-ordered sale of Defendants' real properties for payment toward the State's judgment lien was a sale "under execution," in accordance with Tenn. Code Ann. § 66-8-101(1), and in therefore denying the State's application for sale of the properties free of the statutory right of redemption.

## STANDARD OF REVIEW

The construction of statutes and the application of the law to the facts present questions of law, which we review de novo with no presumption of correctness. *Sallee v. Barrett*, 171 S.W.3d 822, 825 (Tenn. 2005).

## HISTORICAL PERSPECTIVE

In this case, we are examining the right of redemption set forth in Tenn. Code Ann. § 66-8-101, which is a "statutory right of redemption." Many of the cases interpreting this right also use the phrase "equity of redemption." The difference between the two concepts concerns when they are exercised:

> Rights of redemption are basically of two types: those before the sale of property to satisfy a debt and those after. The two types are denominated according to their origins. The right to redeem *before* the sale is a creature of courts of equity, and is therefore referred to as the "equity of redemption." The right to redeem *after* the sale is created by statute and is referred to as the "statutory right of redemption."

Benjamin Pitts, *Waiver of Redemption Rights in Tennessee Mortgages: Discarding the Contracts Clause & Common-Law Concepts*, 55 TENN. L. REV. 733, 734 (1988) (emphasis added) (footnotes omitted). The Tennessee Supreme Court, in *Swift v. Kirby,* 737 S.W.2d 271 (Tenn. 1987), a case dealing primarily with subsection (3) of Tenn. Code Ann. § 66-8-101, found "that the phrase 'equity of redemption' by common usage, embraced the statutory right of redemption" and explained:

> The "idea" that the phrase ["]equity of redemption["] represented, originated when mortgages were used as security instruments, prior to the advent of the deed of trust, and when courts of equity decided to relieve debtors of the harshness of the law of mortgages that vested full title in the mortgagor immediately upon default. The remedy provided by the courts allowed the debtor to redeem at any time between default and consummation of a foreclosure sale. All authorities agree that that right was the original meaning of the equity of redemption. However, with the advent of the right

> of redemption created by statute in the various states, the right of redemption continued to be referred to in many states, as in Tennessee, as the "equity of redemption."

*Id.* at 275, 276.

The statutory right of redemption, which is at issue in this case, "was created in the early 1800s to deal with the problem of inadequate sale price":

> Legislation in various states gave mortgagors and/or judgment debtors the right to redeem property for a time after the sale by paying to the purchaser the purchase price plus interest and costs. This right of redemption put pressure on the bidders to bid the property's true value and prevented the mortgagee or judgment creditors, often the principal if not the only bidder, from obtaining the property for a nominal amount. The debt for which the property was sold was extinguished only to the extent of the proceeds from the sale. If the sale price was less than the amount of the debt and also less than the property's value, the debtor was still liable for the debt, and the debtor's only resource for paying the debt may have been taken in the sale. The statutory right of redemption allowed the debtor to repurchase the property if the sale price was inadequate. The debtor could then extinguish the debt with proceeds from either refinancing or resale at fair market value. In this manner, the statutory right of redemption, like the equity of redemption before it, helped ensure that satisfaction of debt and not the acquisition of property was the result of the transaction.

Pitts, 55 TENN. L. REV. at 735 (footnotes omitted). In 1820, Tennessee first enacted a statutory right of redemption. 1820 Tenn. Pub. Acts, ch. 11. The Tennessee Supreme Court acknowledged the purpose of such a right in *Ewing v. Cook*, 3 S.W. 507 (Tenn. 1887) when it observed, "The legislative purpose in securing both to the judgment debtor and his creditors a right of redemption was to make the land pay as large a part of the debts of the owner as possible." *Id.* at 510. In 1833, the Legislature enacted an exception to that right, which provided that the right of redemption "shall not exist" in cases "where land or interests in lands are directed to be sold by order of the court of chancery, founded upon a foreclosure of a mortgage, deeds of trust or any other case where the specific land to be sold is mentioned in the decree," provided that the complainant makes an application that the property "be sold on a credit of not more than two years nor less than six months" and that the sale is made by the master or commissioner and confirmed by the court, resulting in the purchaser's title being absolute. 1833 Tenn. Pub. Acts, ch. 47, sec. 2. With that historical perspective in mind, we turn to the merits of this appeal.

## ANALYSIS

The State was awarded a sizeable money judgment, which constitutes a debt, against the Defendants, and sought a sale of the Defendants' real property to satisfy that debt. Land is "only subject to redemption under our statute when sold for debt." *White v. Bates*, 15 S.W. 651, 652 (Tenn. 1891). Our task is to construe Tenn. Code Ann. § 66-8-101 to determine whether the State sought a sale "under execution," pursuant to subsection (1) of the statute, which would permit the Defendants to redeem the property, or whether it sought a sale pursuant to subsection (2) such that the right of redemption could be barred. The State argues that it "has not sought to execute on the money judgment by writ and levy . . . [but i]nstead . . . perfected its judgment lien and sought an order of sale to enforce that lien, consistent with the trial court's dominion over the Hales' properties through its appointed receiver,"[2] such that subsection (2) applies and the Defendants' right of redemption can be barred.

We first look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). In giving words "their ordinary and natural meaning," we may "refer to dictionary definitions, where appropriate." *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (citing *State v. Williams,* 690 S.W.2d 517, 529 (Tenn. 1985)).

### I. Interpreting and Applying Tenn. Code Ann. §66-8-101(1)

Tennessee Code Annotated section 66-8-101(1) provides that "Real estate sold for a debt shall be redeemable at any time within two (2) years after such sale . . .[w]here it is sold under execution." However, the statute provides two avenues for the right of redemption to be removed: by asking the chancery court to remove it when the land is to be sold on a credit of between six months and two years and the court confirms that the sale complied with the credit terms and that the purchaser's title is absolute (*id.* § 66-8-101(2)), or when the right is waived ahead of time, as by specific language in a deed of trust (*id.* § 66-8-101(3)).

The State invoked subsection (2), but the trial court held that the State was actually seeking to execute on a judgment, such that subsection (1) applied. Thus, we must first examine the nature of a sale "under execution." In doing so, we do not construe Tenn. Code

[2] Tennessee Code Annotated section 29-1-103 provides, "The courts are all vested with power to appoint receivers for the safekeeping, collection, management, and disposition of property in litigation in such court, whenever necessary to the ends of substantial justice, in like manner as receivers are appointed by courts of chancery." In this case, the trial court appointed a receiver in 2013 over the personal and real assets of the Defendants and placed all of the Defendants' assets *in custodia legis*, subject to the exclusive jurisdiction of the court.

Ann. § 66-8-101 in a vacuum but must consider other relevant rules and statutes. Tennessee Code Annotated section 26-1-103 provides that "[a]ll judgments and decrees of any of the judicial tribunals of this state for money may be enforced by execution." The term "execution" is not defined in Titles 26 or 66, so we deem this an appropriate occasion to consult the dictionary. *See Majors,* 318 S.W.3d at 859. "Execution" is defined as "[j]udicial enforcement of a money judgment, usu[ally] by seizing and selling the judgment debtor's property" and also as "[a] court order directing a sheriff or other officer to enforce a judgment, usu[ally] by seizing and selling the judgment debtor's property." *Execution*, BLACK'S LAW DICTIONARY (11th ed. 2019).

"When the judgment is for the recovery of money, the usual process for enforcement is a writ of execution, also called a writ of fieri facias." Lawrence A. Pivnick, TENNESSEE CIRCUIT COURT PRACTICE, § 29:1 (2021) (footnotes omitted). "Fieri facias" is "[a] writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgment." *Fieri facias*, BLACK'S LAW DICTIONARY (11th ed. 2019). Seeking execution to satisfy a money judgment requires no action by the court. Tenn. Code Ann. § 26-1-201 ("The clerks of the several courts may issue executions in favor of the successful party on all judgments as soon after the adjournment of the court as practicable within the time prescribed by this code, without any demand of the party."). In *Hyder v. Butler*, 52 S.W. 876, 877 (Tenn. 1899), the Tennessee Supreme Court stated, "It is not required in a money recovery whether a decree in chancery or a judgment at law that the Court shall in terms direct the issuance of an execution. Such a decree or judgment, without more, is, in and of itself, an award of execution." This Court, in *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437 (Tenn. Ct. App. 1994), devoted much discussion to the topic of execution in the context of determining the priority of liens:

> A writ of execution is now the customary vehicle for enforcing money judgments. It is simply an order directing the sheriff to levy upon and sell the judgment debtor's property identified in the writ that is not statutorily exempt. Clerks of the courts of record must issue writs of execution thirty days after the entry of a judgment as a matter of course or sooner if requested by the judgment creditor.
>
> A levy of execution is the officer's act of appropriating or singling-out the debtor's property for the satisfaction of a debt. It is accomplished by the officer's asserting dominion over the property by actually taking possession of it or doing something that amounts to the same thing.

*Id*. at 443-44 (citations omitted). We are also mindful of Rule 69.07 of the Tennessee Rules of Civil Procedure, which is titled "Execution on Realty" and states, in relevant part:

> **(2) Judgment Lien.** A judgment lien against the judgment debtor's realty is created by registering a certified copy of the judgment in the register's office

> of the county where the realty is located. Once a judgment lien is created by registration, it will last for the time remaining in a ten-year period from the date of final judgment entry in the court clerk's office and for any extension granted by the court pursuant to Rule 69.04. For the extension of the lien to be enforceable, the judgment creditor must register the court's order extending the judgment.
> **(3) Levy.** As long as a judgment lien is effective, no levy is necessary; the judgment creditor may move for an order of sale. Otherwise a levy occurs when the sheriff exercises control over the judgment debtor's realty. The first judgment creditor to deliver a writ of execution to the sheriff, as shown by record in the clerk's office, has priority over other judgment creditors as to the realty levied upon.
> **(4) Sale.** The sheriff shall sell the debtor's interest in realty by auction. . . .

TENN. R. CIV. P. 69.07. Pursuant to Rule 69.07(3), the judgment creditor has the option of taking the clerk-issued writ of execution to the sheriff or moving for an order of sale. In *Kuykendall v. Wheeler*, 890 S.W.2d 785, 786-87 (Tenn. 1994), the Tennessee Supreme Court stated:

> If the judgment creditor is unable to collect the judgment by legal execution or garnishment, then the creditor may seek the aid of the chancery court. Tenn. Code Ann. § 16-11-104 (1994). The chancery court has the power to subject the property of the judgment debtor which cannot be reached by legal execution to satisfaction of the judgment. Gibson's Suits in Chancery § 456 (7th ed. 1988).

*Id*. at 786-87. Tennessee Code Annotated section 16-11-104, as relied upon by the Supreme Court above, reads: "The chancery court has exclusive jurisdiction to aid a creditor, by judgment or decree, to subject the property of the defendant that cannot be reached by execution to the satisfaction of the judgment or decree under this code."

In this case, the trial court appointed a receiver in 2013 over the personal and real assets of the Defendants and placed all of the Defendants' assets *in custodia legis*, subject to the exclusive jurisdiction of the court. The amount of the judgment outweighed the estimated value of the Defendants' real property. On those facts, the customary process of racing to the sheriff's office with a writ of execution to see how much money could be raised by an execution sale may have been less fruitful than attempting to sell the properties free of the right of redemption. Obviously, sales of real estate subject to redemption may not always sell for the highest price. *Swift*, 737 S.W.2d at 276 ("[T]he forced sale value of real estate, which is well below fair market value, would be significantly further reduced by sale subject to the two year right of redemption."). Cutting off the statutory right of redemption, pursuant to Tenn. Code Ann. § 66-8-101(2) can actually be a benefit to both a

defendant and his creditors, as the Tennessee Supreme Court stated in 1872 when interpreting the statutory language now codified at Tenn. Code Ann. § 66-8-101(2):

> The statute intends to benefit both debtor and creditor—the first, by exposing to sale his property under such circumstances as promise an approximation to its value, by giving time for payment to the purchaser; and the creditor, by an assurance that an absolute sale will more nearly pay his debt. That buyers will give more for an absolute than a contingent estate, was a motive to the passage of the Act—the provisions for credit is a main element of the law. Which element in its decree the court is not authorized to sell, barring the right of redemption.

*Hodges v. Copley*, 58 Tenn. (11 Heisk.) 332, 334-35 (Tenn. 1872).

The State was certainly entitled to pursue execution as a means of satisfying its money judgment, but we do not read a requirement in Tenn. Code Ann. § 66-8-101 that the State must pursue an execution sale because it had a money judgment. In other words, the statute does not specify that a judgment creditor is categorically unable to seek a sale that barred the right of redemption.

II. Interpreting and Applying Tenn. Code Ann. §66-8-101(2)

We now turn to examine the applicability of subsection (2) of the statute to the facts of this case. Again, that provision reads:

> [w]here it is sold under any decree, judgment, or order of a court of chancery, whether founded upon a foreclosure of a mortgage, or deed of trust, or otherwise, unless, upon application of the complainant, the court orders that the property be sold on a credit of not less than six (6) months, nor more than two (2) years; and that, upon confirmation thereof by the court, no right of redemption or repurchase shall exist in the debtor or the debtor's creditor, but that the title of the purchaser shall be absolute[.]

Tenn. Code Ann. § 66-8-101(2).

The above language clearly contemplates that a chancery court will order the sale that bars the right of redemption. The Defendants argue that the State's election to seek a judicial sale pursuant to Tenn. Code Ann. § 66-8-101(2) in circuit court is fatal to its cause. We disagree. While the statute explicitly vests the chancery court with the power to order a sale that bars the right of redemption, as does an analogous statute, Tenn. Code Ann. § 21-1-803, the circuit court is also vested by statute with the power to perform the functions of a chancery court. Tenn. Code Ann. § 16-10-111 ("Any suit of an equitable nature, brought in the circuit court, where objection has not been taken to the jurisdiction, may be

transferred to the chancery court of the county, *or heard and determined by the circuit court upon the principles of a court of equity, with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court*.") (emphasis added); *see also* TENN. R. CIV. P. 69.01 ("A Circuit Court judgment will reach equitable interests without a Chancery Court action to enforce the judgment."). In light of the protracted nature of these proceedings and the circuit court's familiarity with them, as well as the fact that the Defendant's assets were already *in custodia legis* and the Defendants have not otherwise challenged the circuit court's jurisdiction, we discern no issue with the State's election to pursue recovery of its judgment by seeking an order barring the right of redemption from the circuit court.

The language of subsection (2) also contemplates that the land be sold under a decree, judgment, or order that is "founded upon a foreclosure of a mortgage, or deed of trust, or otherwise," issued by a chancery court. Tenn. Code Ann. § 66-8-101(2). Obviously, the judgment in this case was not founded upon a foreclosure of a mortgage or deed of trust, and thus the State must necessarily contend that the proceedings below resulted in an order "founded upon . . . otherwise." "Otherwise" is a broad term that is defined as "in another manner," "[b]y other causes or means," "[i]n other conditions or circumstances," or "[e]xcept for what has just been mentioned." *Otherwise*, BLACK'S LAW DICTIONARY (11th ed. 2019). By its plain language, the statute means that any judgment that is rendered by a court exercising chancery powers could subject the debtor's land to a judicial sale that bars the right of redemption, as long as the requirements of the statute are met.

The Defendants contend that the statute should not be read so broadly and that the right of redemption limitation in subsection (2) only applies to "divorce, partition, estates or similar Chancery type (in rem) property liquidation, or unless it has been waived in writing" and go on to argue:

> [T]here are no exceptions, as urged by the State. The right of redemption applies to tax cases, and to civil judgment creditors of every nature and in every context. If the State's present position carries any viability, where is the specific case that directly refutes Gibson's description of the traditional view? That case does not appear in the State's brief.

Curiously, the Defendants themselves cite to no legal authority to support this position. Given the facts of this particular case, where the Defendants' assets have been in the circuit court's custody since 2013, we find their argument unavailing. Moreover, as will be discussed in greater detail below, there are several cases that directly refute the Defendants' arguments.

In response to the Defendants' argument, the State argues that any decree ordering a sale of the property can be used to bar the right of redemption, as long as the judgment

creditor asks the court of equity for such a limitation. The State relies on the similar language of Tenn. Code Ann. § 21-1-803,[3] which is found in Title 21, which pertains to "Proceedings in Chancery," and reads:

> Where, upon the foreclosure of a mortgage or deed of trust, or in any case, the specified land to be sold is mentioned in the decree, the court, upon the application of the complainant, may order that:
>
> (1) The property be sold on a credit of not less than six (6) months nor more than two (2) years;
>
> (2) When the sale is made, reported and confirmed, no right of redemption or repurchase shall exist in the debtor or the debtor's creditors, but that the purchaser's title shall be absolute; and
>
> (3) The surplus of the purchase money, or the bonds or notes taken for the purchase money, over and above what is necessary to pay the complainant's debt, be paid to the debtor or the debtor's other creditors entitled to the payment.

Despite the confusing use of punctuation in the introductory phrase of the above statute, we think that the treatise *Gibson's Suits in Chancery*, which is based on its author's interpretation of both Tenn. Code Ann. §§ 66-8-101 and 21-1-803, correctly inserts the word "where" in his discussion of "Sale of Land in Bar of Redemption":

> One naturally loves the land one owns, and in all ages among all civilized nations, the law has regarded a person's home as sacred, and has declared that when sold it should be subject to redemption.
>
> A. *When the Right to Redeem Exists, and When it May Be Barred.* Ordinarily, real estate sold for debt under any judicial procedure is sold subject to redemption at any time within two years after such sale. However, upon a foreclosure of a mortgage, or deed of trust, **or in any case where the specific land to be sold is mentioned in the decree,** the Court, upon application of the plaintiff, may order: (1) that the property be sold on a credit of not less than six months, nor more than two years; (2) that when the sale

[3] The State argues that the language of Tenn. Code Ann. § 21-1-803 "places no limitation on the court's power to bar the right of redemption where a party is seeking to enforce a judgment," and by imposing one, the trial court has created a statutory conflict where none exists. We disagree with the premise of the State's argument; Tenn. Code Ann. § 21-1-803, as we read it, clearly places a limitation on the court's power to order a sale that bars the right of redemption: when the circumstances do not merit it. The court's discretion is not unbridled; a decision to limit the right of redemption must be based on a request by the judgment creditor and on the facts and the law. Because we ultimately conclude that the trial court erred in its conclusion that Tenn. Code Ann. § 66-8-101(2) did not apply, no conflict between the statutes has been created.

> is made and reported, and confirmed, no right of redemption or repurchase shall exist in the debtor or his creditors, but that the purchaser's title shall be absolute.

Henry R. Gibson, *Gibson's Suits in Chancery*, § 18.03 (William H. Inman ed. 8th ed. 2004) (footnotes omitted) (emphasis added). The bolded language above comports with the Legislature's 1833 Act, chapter 47, section 2, which is the predecessor of Tenn. Code Ann. § 21-1-803 and marks the Legislature's first authorization of a chancery court's authority to bar the right of redemption. Despite the language of the Act, a comma was codified in place of the word "where" in section 4489 of the 1858 Code of Tennessee, and has been carried forward to the present version of Tenn. Code Ann. § 21-1-803. Regardless of whether a comma or the word "where" should appear in § 21-1-803, the broad language in that statute as well as Tenn. Code Ann. § 66-8-101(2) does not limit the court's authority to order a sale barring the right of redemption in the way argued by the Defendants. We conclude that an order arising out of any case where the specific land to be sold is identified by the court will suffice. Our conclusion in this regard is supported by the following cases, in which a bar to the right of redemption was invoked, despite the fact that they arose out of circumstances other than foreclosure on a mortgage or deed of trust or "divorce, partition, estates[,] or similar Chancery type (in rem) property liquidation," as listed by the Defendants.

In *State v. Duncan*, 71 Tenn. 679, 691 (Tenn. 1879), the State of Tennessee and Davidson County filed suit in chancery court as lienholders due to the Defendant's failure to pay several tax bills and sought to sell two pieces of property without the right of redemption to satisfy outstanding tax bills. The Tennessee Supreme Court held that "taxes, when assessed, become a personal debt, and the government is entitled to all the remedies for their collection, including an ordinary suit at law, if it chooses to resort to that remedy." *Id*. at 685. The Court applied section 4489 of the 1858 Code, which is the nearly identical predecessor of Tenn. Code Ann. § 21-1-803, and went on to state:

> The provisions of our Code, sec. 4489, are general and comprehensive, and give the chancery court the power to sell on a credit, so as to cut off the equity of redemption in all cases where the specific land to be sold is mentioned in the decree. In our opinion these provisions are broad enough to include this case.

*Id*. at 691.

In another similar case, *Thomas v. Hammer*, 81 Tenn. 620 (Tenn. 1884), which is, admittedly, more about tax lien priority than the statutory right of redemption, the tax collector, operating under the authority of the State, first asked the circuit court for an order of condemnation and sale of land to recover delinquent taxes that had been assessed in 1871, 1872, and 1873. *Id.* at 620. When the sale was determined to be invalid by the

Comptroller due to some unspecified irregularity, the tax collector paid the amount of taxes himself and then filed a bill against the owners of the property, seeking the court's aid to be substituted on the lien, and for a sale of the land upon a credit of six months in bar of the right of redemption, which was granted. *Id*. at 620-21. At that sale, Mr. Hammer bought the property, the court confirmed the sale, and the master executed a deed to Mr. Hammer on July 24, 1880. *Id.* at 621. However, an execution issued by a justice of the peace in 1874 had been levied on the lot, and the circuit court ordered the lot condemned and sold at a sheriff's sale, where Mr. Thomas purchased it; his deed was dated May 20, 1880. In June 1881, Mr. Thomas filed a bill in the chancery court seeking to set aside Mr. Hammer's deed as invalid because "the specific directions of the statute for the sale of land by revenue collectors was not pursued by the decree or the clerk and master under it." *Id.* The chancellor concluded that Mr. Hammer acquired title to the land by his purchase of the land under the decree—a decree that barred the right of redemption—and dismissed Mr. Thomas' complaint. *Id.* Because the lien for taxes existed at the time they were assessed, which was before the levy of execution and the proceedings at which Mr. Thomas purchased, the Tennessee Supreme Court affirmed the chancellor's decree. *Id.* at 622.

In *City of Nashville v. Lee*, 80 Tenn. 452 (Tenn. 1883), the bill was filed in chancery court by the Mayor and City Council "to subject [a] lot to sale for the satisfaction of the taxes due the city," and the court ordered the lot sold "upon a credit and in bar of the equity of redemption," which was not challenged on appeal. *Id.* at 453.

In *State v. Covington*, 72 Tenn. 51 (Tenn. 1879), the circuit court ordered the sheriff to sell land to satisfy a judgment enforcing a tax lien, on a credit of six and twelve months credit free from the equity of redemption. *Id.* at 53. Ultimately, the case came down to whether a justice of the peace had jurisdiction to enforce the State's tax lien when the amount was less than $50, which is not relevant to our decision in this case, but the fact that the circuit court ordered the sheriff to conduct a sale of land "free from the equity of redemption" to satisfy the lien certainly is. The Supreme Court did not consider whether the equity of redemption was properly barred, but it is apparent that the parties raised no issue with the right to redeem being barred.

In *Smith v. Taylor*, our Supreme Court held that a judgment creditor was entitled to a sale of land in bar of the right of redemption to satisfy the judgment when such a sale had been requested in the bill as alternative relief. 79 Tenn. 738, 744 (Tenn. 1883). In *Smith*, the judgment creditor ("Smith") initially sought a sale of land under execution to recover a judgment before realizing that the land had previously been sold to another judgment creditor whose execution had been levied a year prior.[4] The Supreme Court held that the

---

[4] Two money judgments had been recovered against the defendant, Mr. Taylor, in 1877: one by the complainants, who were the executors of Smith's estate, in August 1877 and another a few months prior by "Nassauer & Lowenthal." *Id*. at 739-40. Mr. Taylor apparently owned one lot of land, which was sold twice to satisfy the two judgments. *Id.* Execution issued on Nassauer & Lowenthal's judgment was levied in January 1878, and they purchased the land at the first execution sale, which was held in July 1878. *Id*. at

title of the purchaser of land sold by virtue of a levy of execution and an order of sale relates to the date of the levy. *Id*. at 741. Accordingly, when Smith's execution was levied, the judgment debtor no longer held title to the property, as it had been sold under the execution of another judgment creditor and vested in that party, who had purchased the land at an earlier execution sale. *Id*. at 740-41. Because Smith "acquired nothing" by purchasing the property at the later execution sale, he could not "maintain the bill [which presumably sought to have title of the property vested in Smith] on any right then acquired." *Id*. at 743. As a means of alternative relief, the complainants had asked "that the satisfaction of [their] judgment be set aside, and that the lot be subjected to the satisfaction of the debt by sale, free from the equity of redemption." *Id*. The court granted the complainants the alternative relief they sought, setting aside the satisfaction of the judgment because no title had been required by the sale and ordering the land to be "sold on a credit of twelve months, free from any equity of redemption, in satisfaction of the complainant's judgment, interest and costs, and cost of this cause." *Id*. at 744.

In *Turner v. Argo*, 14 S.W. 930 (Tenn. 1890), the complainants filed suit against a husband-and-wife partnership to collect on an account for goods sold and to set aside a fraudulent sale of goods. *Id*. at 930. The complainants, in their amended bill, sought a sale of three lots owned by the defendant wife to satisfy the debts. *Id*. The chancellor entered a decree in favor of the complainants for the amount of their debts and ordered the sale of the lots upon a credit barring the equity of redemption and refused to grant the defendant wife a homestead exemption. *Id.* Pertinent to the case before us, our Supreme Court held that because there was no application in the amended bill to bar the right of redemption, the chancellor's decree should be modified such that the land would be sold for cash, subject to the right of redemption. *Id.* The Supreme Court modified the court's order only because the complainant did not ask that the bar of redemption apply; the Court did not indicate that the case was of a type where the bar of the right of redemption could not be sought. *Id*.

We find compelling the following language from the Tennessee Supreme Court in the 1870 case of *McBee v. McBee*:

> The general law is, that all real estate sold under execution, or under a decree, judgment or order of any Court of Chancery, whether founded on a foreclosure of a mortgage, or deed of trust, or otherwise, shall be redeemable at any time within two years after such sale. Code, 2124. By this general law the right of redemption is secured, whether the sale be for cash or on a credit. **But this right of redemption is subject to this exception: When, upon**

---

739. Shortly thereafter, execution issued on the complainants' judgment was levied in January 1879, and the complainants purchased the land at the second execution sale, which was held in June 1879. *Id*. at 740. The sheriff gave Nassauer & Lowenthal a deed to the property in 1880, and the sheriff made the complainants their deed in 1881. *Id*. at 739, 740.

> **application of a complainant, the Court orders that the property be sold on a credit of not less than six months nor more than two years, upon confirmation thereof by the Court, no right of redemption or re-purchase shall exist in the debtor or his creditor, but the title of the purchaser shall be absolute. In such case no right of redemption or of re-purchase exists.** Code, 2124 and 4489. By this exception, the complainant may, with the assent of the Court, deprive the debtor of the benefit of redemption secured to him by the general law. In the case of *Burrow v. Henson*, 2 Sneed, 658, this Court said, that to obtain the benefit of the exception and destroy the right of redemption, the sale must be brought strictly within its provisions. Two things, therefore, must appear distinctly in the decree to make it operative in destroying the right of redemption. First, it must appear that complainant made the application for a sale on credit. It is not sufficient that the Chancellor, of his own motion, ordered the sale on a credit. It must appear that he was moved to do so upon the application of complainant. Such was the holding of the Court in *Burrow v. Henson*, just referred to. In that case there was no order that the land be sold free from redemption. In the case before us, it is not stated that the Chancellor, upon the application of complainant, ordered the land to be sold on a credit of six months; but at the conclusion of the decree it is stated, that at the special instance and request of the complainant the said land shall be sold without the equity of redemption. This, we think, was a substantial compliance with the requisites of the exception, and that in this respect the decree was not erroneous.

48 Tenn. (1 Heisk.) 558, 562-63 (Tenn. 1870). *McBee* was a divorce action in which the Supreme Court ultimately held that the right of redemption should not have been cut off because the sale was not executed properly; the court required part of the sale to be in cash and limited the credit to "so short a time as six months," violating "[b]oth the letter and spirit of the law." *Id.* at 565. In discussing the right of redemption, the *McBee* Court referenced Code §§ 2124 and 4489, which read substantially the same as Tenn. Code Ann. §§ 66-8-101 and 21-1-803, respectively, do today. Importantly, in the above quoted language, the *McBee* Court made no distinction as to what type of case or what type of sale this exception might apply. It certainly drew no distinction between chancery cases and circuit court cases, or the type of proceedings that resulted in the judgment.

While the Defendants argue that "[t]he right of redemption applies to tax cases, and to civil judgment creditors of every nature and in every context," the preceding cases provide authority to the contrary. Both the chancery and circuit courts have ordered sales of land that barred the right of redemption to satisfy tax liens, and the above cases stand for the proposition that in any case where land is to be sold to pay a debt, a complainant may seek an order from a court of equity for a sale of the specifically identified property

on credit and in bar of the right of redemption.[5] Based on the foregoing authority, we conclude that subsection (2) of Tenn. Code Ann. § 66-8-101 is broad enough to include the facts of this case within its ambit.

III. Waiver

We next address the Defendants' argument that because the State did not seek a sale that barred the right of redemption in the initial application, it has waived its right to do so. Tennessee Code Annotated section 66-8-101(2) states that the court can extinguish the right if redemption "upon application of the complainant." The State styled its initial application as a "Motion for an Order of Sale of Real Properties Owned by Don and Dixie Hale" and a "Motion for an Order of Sale of the Real Properties of Dan Hale." Each motion requested an order of sale of the respective Defendants' real estate to satisfy their debt.

Those motions did not contain any language requesting that the sale be made on a credit of no less than six months nor more than two years, nor did it explicitly request that no right of redemption exist. Instead, it requested that the sale of Don and Dixie Hale's residence be effectuated through the "retention of qualified real estate professionals," since "a sale of the . . . [p]roperty through a real estate broker will likely yield the highest value." The motion also requested that the property be sold "free and clear of all interest and liens and that any such interest attaching to the net sale proceeds" and that those Defendants vacate the premises and leave it in good and marketable condition in order to prepare it for sale. With respect to the sale of Dan Hale's numerous properties, the State's motion sought the court's authorization for the receiver to contract with a licensed auction company for the sale of the properties by public auction "to the highest bidder free and clear of all interests, with any interest that may exist attaching to the net proceeds of the sale." The Defendants filed separate responses to the motions; Dan Hale disputed no part of the

---

[5] *Gibson's Suits in Chancery* neatly sums up the process:

> Pursuant to these statutory provisions, three things must be done to destroy the right of redemption:
>
> 1. The plaintiff must pray in his complaint that the land specified in the complaint be sold on a credit, and in bar of the equity of redemption;
> 2. This specified land must be mentioned in the decree of sale; and
> 3. The decree must order that the sale be on a credit, specifying the time, which must be not less than six months, nor more than two years, and that when made no right of redemption shall exist.
>
> . . . It is not imperative that a sale on credit and in bar of the equity of redemption be ordered merely because the plaintiff asks for such relief in his complaint. It is a matter of sound legal discretion to be exercised in view of the facts of the case.

*Id*. at §18.03 (footnote omitted).

motion that pertained to the sale of his property, and Don and Dixie Hale disputed only the need for them to vacate their property prior to the sale.

In its subsequent application, the State specifically asked that the court order the sale of two properties that were "ready to be sold"; one was Don and Dixie Hale's residence, the other was Dan Hale's most valuable parcel. The State also asked that the order of sale "include a judicial bar to the right of redemption." The State's application specifically requested the court order the sale be made "on a credit of not less than six (6) months, nor more than two (2) years in accordance with Tenn. Code Ann. § 66-8-101" and confirm "that no right of redemption or repurchase shall exist in the debtor or debtor's creditor but that the title of the purchaser shall be absolute." The trial court declined to grant such an order.

In *Rigsby v. Marler*, 66 S.W.2d 232 (Tenn. Ct. App. 1932), the chancery court ordered land sold for debt without the right of redemption despite the fact that the bill "contained no prayer for sale in bar of redemption" and the complainant made no such request at the hearing. *Id.* at 235. The bill only asked "that the property be sold on six and twelve months' time." *Id*. This Court noted the rule that "the complainant must pray in his bill for sale to be in bar of the equity of redemption in order to bar the right to redeem"; because that had not been done and because a sale had not yet occurred, the lower court was ordered to correct its decree. *Id.* In contrast, in *McBee*, the Tennessee Supreme Court held that the complainant's "substantial compliance" with the law was sufficient to justify the court's decision to bar the right of redemption where the complainant did not apply for the land to be sold on a credit of six months, but did request that the land be sold without the equity of redemption. 48 Tenn. at 562-63.

The best practice for a complainant seeking a sale that bars the right of redemption is to explicitly request a sale using the language set forth in Tenn. Code Ann. § 66-8-101(2) in the initial application. *See Hodges*, 58 Tenn. at 336 ("For complainants desiring to sell land cutting off the equity of redemption, and asking a cash payment, it is the better practice, if not the only proper one, to present the application in the original bill[.]"). While the language the State used in its initial motion is not entirely clear and certainly does not follow that of Tenn. Code Ann. § 66-8-101(2), the State did file a second application prior to the trial court's entry of an order on their first motion, in which it clarified that it sought a sale that barred the right of redemption.[6] We apply the Supreme Court's rationale in

---

[6] The Defendants argue that "it is indeed untimely to later attempt[] to request a waiver [of the right of redemption] – particularly after the State's unopposed order has been heard and granted." Apparently the trial court had orally indicated at a hearing that the State could move forward with its request to sell two of the properties, but no order to that effect appears in the record. It was not until after this hearing that the State filed its amended application. Because a trial court speaks through its orders, *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977), the absence from the record of the order referenced by the Defendants short-circuits this particular argument.

*McBee*, 48 Tenn. at 562-63, to the unique facts before us and conclude that the State's subsequent application substantially complied with Tenn. Code Ann. § 66-8-101(2). The State did not waive its right to seek a sale that barred the right of redemption.[7]

In light of the foregoing discussion, we vacate the judgment of the trial court and remand the matter for further proceedings. On remand, the decision of the trial court as to whether or not to bar the right of redemption is one we leave to its discretion. *Hoyal v. Bryson*, 53 Tenn. (6 Heisk.) 139, 142-43 (Tenn. 1871) ("[W]e hold it is not imperative on the court to bar the equity of redemption, but a matter of sound legal discretion, to be exercised in view of the fact[s] of the case."); *see also Smith*, 79 Tenn. at 744; *Gibbs. v. Patten*, 70 Tenn. 180, 185 (Tenn. 1879) (holding that generally, where the complainant asks in his bill for a sale in bar of the right of redemption, he is "clearly entitled" to such a decree unless it is a "very exceptional" case).

## CONCLUSION

The judgment of the trial court is vacated, and the case is remanded. Costs of this appeal are assessed against the appellees, Dan Hale, Dixie Hale, and Don Hale, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_______________
ANDY D. BENNETT, JUDGE

---

[7] Our holding in this regard is only applicable to the two parcels of land mentioned in the State's subsequent application, which substantially complied with Tenn. Code Ann. § 66-8-101(2). As the State has not moved for a sale barring the right of redemption with respect to the remaining properties of Dan Hale that were identified in the State's initial motion, we do not reach the issue of whether the right has been barred with respect to Dan Hale's remaining properties.